# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TAMMY O'CONNOR and MICHAEL STEWART, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-1731-B |
| | § | |
| JASON CORY, THOMAS FARB, and GREG FURST, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sold their company to Defendants' company. A Purchasing Agreement memorialized the transaction. Plaintiffs have now brought fraud claims against Defendants based on representations both in and outside the Agreement. Defendants raise a disclaimer-of-reliance defense arguing that the Agreement expressly states that Plaintiffs relied only on representations contained in the Agreement, and thus, Plaintiffs cannot base their fraud claims on extracontractual representations. This Court granted summary judgment under Rule 56(f) on all Plaintiffs' claims based on Defendants' disclaimer-of-reliance defense, but provided Plaintiffs with the opportunity to respond. Based on the parties' responsive briefing, the Court will not dismiss Plaintiffs' claims in their entirety. However, the Court will **GRANT, in part,** summary judgment against Plaintiffs pursuant to Rule 56(f).

# I.

# BACKGROUND

A.     *Factual History*[1]

This dispute stems from a written purchase agreement (hereinafter the "Agreement") between Plaintiffs Tammy O'Connor and Michael Stewart, and Atherio, Inc.[2] (Atherio). Under this Agreement, Plaintiffs sold their interest in their technology consulting company, Red River Solutions, to Atherio. *See* Doc. 118-2, Pls.' App., 7–70 (the Agreement).

In the summer of 2012, Plaintiffs began marketing their company for sale. Doc. 124, Defs.' Resp., 5. Shortly thereafter, Plaintiffs began negotiating the sale of the company with representatives from Atherio. Over the course of eleven months, the two sides negotiated and finalized the Agreement whereby Atherio would purchase Plaintiffs' interest in Red River Solutions in exchange for $3.15 million, stock in Atherio, and other compensation. *See* Doc. 95, Def. Cory's Resp. to Pls.' Mot. for Summ. J., 5. The deal closed sometime between June 25 and June 27 of 2013.[3]

Plaintiffs now allege a variety of fraud claims against Defendants Jason Cory, Thomas Farb, and Greg Furst in relation to the Agreement. During the negotiation and closing of the transaction, Defendant Cory was Atherio's Chief Executive Officer. Defendants Farb and Furst also held executive positions at Atherio.

---

[1] This factual history is drawn from the summary-judgment evidence. The Court limits its discussion of the facts to the narrow issue before it: whether the disclaimer-of-reliance clause bars Plaintiffs' claims.

[2] Plaintiffs dismissed Atherio, Inc. *See* Doc. 37, Am. Compl.

[3] While the Agreement is dated June 25, 2013, Doc. 118-2, Pls.' App., 7, Plaintiffs assert there is a fact issue as to when the transaction actually closed. *See* Doc. 129, Pls.' Reply, 4. The Court does not resolve this issue in this Order.

Plaintiffs base their fraud claims on representations that Defendants made both in and outside of the Agreement. Regarding extracontractual representations, Plaintiffs allege that during various meetings and discussions leading up to the closing, Cory made misrepresentations about his age, his military experience, and his net worth. Doc. 118, Pls.' Resp., 6. Plaintiffs also allege that Defendants made various different misrepresentations—both within the Agreement and outside of it—regarding the resignation of Farb as Atherio's Chief Financial Officer. Doc. 63-1, Pls.' Br. in Support of Mot. for Partial Summ. J., 3. According to Plaintiffs, Farb resigned before the Agreement closed and thus Atherio was obligated to pay Farb over $1 million in severance benefits at that time. Doc. 118, Pls.' Resp., 6–7. Plaintiffs claim that Defendants failed to disclose and further affirmatively hid these facts. *Id.* On the other hand, Defendants argue that Farb did not resign until one day after the Agreement closed and that the severance obligation to Farb under his employment agreement was never triggered; thus, Defendants claim they did not misrepresent or fail to disclose any facts related to Farb. Doc. 124, Defs.' Resp., 7–9.

The crux of the issue here is a disclaimer-of-reliance clause in the Agreement. Plaintiffs disclaimed reliance on representations outside of the Agreement—*i.e.*, extracontractual representations—in § 3.28(c) of the Agreement:

> Each Contributor [Plaintiff] hereby acknowledges and agrees that the ***representations and warranties of the Acquirer [Atherio] contained in this Agreement represent all of the representations and warranties made by it*** as part of the transactions contemplated hereby and that ***neither Contributor [Plaintiffs] nor any Person claiming through any Contributor is relying on any other representations or warranties*** (express and or implied) in making its decision to consummate these transactions.

*Id.* at 47 (emphasis added).

The Court already held that Plaintiffs cannot base their fraud claims on any extracontractual

representations because of this disclaimer-of-reliance clause. Doc. 109, Order. Plaintiffs now assert that their fraud claims should survive summary judgment because Defendants have made intracontractual misrepresentations. Doc. 118, Pls.' Resp., 12–19.

B.    *Procedural History*

Plaintiffs filed their Complaint against Defendants on June 23, 2016. *See* Doc. 1, Pls.' Compl. Plaintiffs' current Second Amended Complaint alleges causes of action under federal securities laws, Texas securities law, and common-law fraud and statutory fraud. *See* Doc. 37, Pls.' Second Am. Compl.

This Order comes as a result of the Court's June 7, 2018 Order denying Plaintiffs' motion for partial summary judgment on Defendants' disclaimer-of-reliance defense. Doc. 109, Order. Each Defendant pleaded, among other things, an affirmative defense based on the Agreement's disclaimer-of-reliance clause. Doc. 46, Cory's Answer, ¶ 350; Doc. 47, Furst & Farb's Answer, 36, ¶ 7. Plaintiffs moved for partial summary judgment on the Defendants' disclaimer-of-reliance defense. Doc. 63, Pls.' Mot. Summ. J. The Court's June 7, 2018 Order not only denied Plaintiffs' motion, but the Court also granted summary judgment under Rule 56(f) against all of Plaintiffs' claims pursuant to the disclaimer-of-reliance clause. Doc. 109, Order, 5. The Court ordered Plaintiffs to file a response containing reasons why the Court should not grant summary judgment in favor of Defendants.

Plaintiffs timely filed their response on July 9, 2018. Doc. 118, Pls.' Rule 56(f) Resp. to the Court's Summ. J. Order ("Pls.' Resp."). Defendants then filed their response to Plaintiffs' response on July 30, 2018. Doc. 124, Defs.' Resp. to Pls.' Resp. ("Defs.' Resp."). Finally, Plaintiffs filed their reply brief on August 10, 2018. Doc. 129, Pls.' Reply. With the motion now ripe for review, the Court will consider whether summary judgment is appropriate on Defendants' disclaimer-of-reliance

defense.

## II.

## LEGAL STANDARD

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the nonmovant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the nonmovant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the nonmovant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the nonmovant. *Id.* Nevertheless, a nonmovant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the nonmovant does provide must raise more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmovant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

Under the recently amended Rule 56(f), a district court may (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f)(1)–(3). However, before doing so, the court must give the parties notice and a reasonable time to respond. *Id.*; *see Luig v. North Bay Enters., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016) ("A court may grant summary judgment for a nonmovant only if the losing party is on notice and has the opportunity to come forward with all its evidence.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

## III.

## ANALYSIS

Plaintiffs have proposed four reasons why the Court should not grant summary judgment for Defendants. First, Plaintiffs claim § 4.3(a) of the Agreement excepts all of their fraud claims from the disclaimer-of-reliance clause and thus their fraud clams wholly survive this Court's June 7, 2018 Order. Second, Plaintiffs claim that, alternatively, their Delaware common-law fraud claims based on intracontractual misrepresentations in the Agreement should survive the Court's prior Order. Third, Plaintiffs contend that Third Circuit law governs the effect of the disclaimer-of-reliance clause on their federal securities claim and that under Third Circuit law, the disclaimer-of-reliance clause does not bar their claim. And fourth, Plaintiffs argue that their Texas Securities Act (TSA) claim can proceed in spite of the disclaimer-of-reliance clause because reliance is not an element of a TSA

fraud claim.

A.    *Section 4.3(a)*

Plaintiffs claim that § 4.3(a) of the Agreement excepts their securities fraud claims from the Agreement's disclaimer-of-reliance provision, regardless of whether they are based on intracontractual or extracontractual representations. Doc. 118, Pls.' Resp., 14. In response, Defendants argue that Plaintiffs' reading of § 4.3(a) is merely an attempt to circumvent this Court's June 7, 2018 Order, which barred Plaintiffs' claims based on reliance on extracontractual representations. Doc. 124, Defs.' Resp., 13–14. Defendants further contend that Plaintiffs' interpretation of this Section would render other portions of the Agreement meaningless. *Id.*

Section 4.3(a) states in relevant part that Atherio's "issued and outstanding equity interests . . . [have] been offered, sold, issued and delivered by the issuer in material compliance with all applicable Laws, including federal and state corporate and securities Laws." Doc. 118-2, Pls.' App., 48. This language does not except any claims from the Agreement's disclaimer-of-reliance provision. First, the provision pertains only to equity interests of Atherio outstanding at the time of the transaction; it does not relate to representations made with respect to the transaction itself. Second, contrary to Plaintiffs' assertion, § 4.3(a) says "all applicable Laws," not just securities laws. But to hold that the promise to comply with all applicable laws excepts any claims from the disclaimer-of-reliance clause would be to hold that the promise excepts all claims from the disclaimer-of-reliance clause—not just securities-fraud claims.

Thus, because Plaintiffs' interpretation would essentially remove the disclaimer-of-reliance clause and the entire "Representations and Warranties" section from the Agreement, the Court declines to adopt it. *See Elliot Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998) ("It is well

established that a court interpreting any contractual provision . . . must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument."); *2009 Cailoa Family Tr. v. PWA, LLC*, 2014 WL 1813174, at *7 (Del. Ch. Apr. 30, 2014). The Court therefore holds that § 4.3(a) excepts no claims from the disclaimer-of-reliance provision.

B.    *Claims Based on Intracontractual Misrepresentations or Omissions*

Next, Plaintiffs argue that three misrepresentations in the Agreement—all related to Thomas Farb's alleged resignation as CFO—support their common-law fraud claims under Delaware law:[4] (1) that Defendants misrepresented that Farb was Atherio's CFO in a capitalization table included in disclosure schedules dated June 20, 2013; (2) that Defendants failed to disclose a stock obligation Atherio owed because of Farb's resignation, which violated the Agreement; and (3) that Defendants' failure to disclose Atherio's severance obligation to Farb violated contractual representations that Atherio's financial statements complied with Generally Accepted Accounting Principles ("GAAP"). Doc. 118, Pls.' Resp., 13–19.

In response, Defendants argue that the available evidence contradicts Plaintiffs' claims because Farb's resignation was not effective prior to the close of the Agreement. *See* Doc. 124, Defs.' Resp., 11–12. Because Farb was still the CFO when the Agreement was executed, Defendants assert that Plaintiffs' claims based on those three intracontractual misrepresentations fail because they were not in fact misrepresentations when made. *Id.* at 13.

To preface, the Court limits the scope of its analysis to whether the disclaimer-of-reliance

---

[4] Application of Delaware law is not in dispute as to Plaintiffs' common-law claims. However, there are choice-of-law issues related to the other claims that are discussed in detail below.

clause bars Plaintiffs' state-law fraud claims outright—the Court will not extend its analysis into whether these intracontractual representations are sufficient to create a fact issue as to each element of the Plaintiffs' claims. The Court finds that such analysis is better left to resolution on Defendants' Motions for Summary Judgment (Docs. 140 & 142), as Plaintiffs were required to respond only to the Court's decision on the disclaimer-of-reliance clause.

As stated above, Plaintiffs argue that three intracontractual misrepresentations survive the disclaimer-of-reliance clause and keep their state law claims alive. Defendants do not seem to dispute that the disclaimer-of-reliance clause applies only to extracontractual representations; instead, Defendants argue the alleged intracontractual misrepresentations are actually true. In other words, Defendants assert that because Farb had not yet resigned as CFO at the close of the Agreement, the representations in the Agreement that purport to hold Farb out as the CFO at closing are not false or misleading. *See* Doc. 124, Defs.' Resp., 11–13. In their reply, Plaintiffs claim that Defendants have switched "from the reliance element of Plaintiffs' claims (the sole focus of the Order) to the falsity element." Doc. 129, Pls.' Reply, 2. Plaintiffs then go on to dispute the argument that the intracontractual representations were true when made. *Id.* at 4–5.

The Court agrees with Plaintiffs that Defendants' arguments go beyond the scope of its Order granting summary judgment based on the reliance element of Plaintiffs' claims. Thus, the Court holds—without deciding whether these contractual statements are in fact misrepresentations—that the intracontractual misrepresentations survive the disclaimer-of-reliance clause. While Plaintiffs will have to respond to Defendants' argument that these representations are not false (as well as the other elements of their claims challenged by Defendants), the Court finds that the proper medium for addressing these arguments is in response to Defendants' summary judgment motions.

C.    *Federal Securities Fraud Claims*

  i.    <u>Choice of Law</u>

Next, Plaintiffs claim that Third Circuit law governs their federal securities fraud claims. Doc. 118, Pls.' Resp., 19. Because the parties included a Delaware choice-of-law clause in their Agreement and Delaware is in the Third Circuit, Plaintiffs argue that the federal law of the Third Circuit, and only the Third Circuit, governs this case. *Id.* However, Plaintiffs' argument depends on the premise that "the laws of Delaware" refers not only to Delaware state law but also to the federal law from the circuit in which Delaware is located. Defendants respond by arguing that (1) Plaintiffs have failed to support this contention with authority and that (2) their federal claim nonetheless fails under Third Circuit law.

The Court agrees with Defendants' first argument. A plain reading of the Agreement undermines Plaintiffs' argument. Section 11.8 states that the Agreement and all related disputes are to be "governed by, and construed in accordance with, the *internal laws* of the State of Delaware, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles." Doc. 118-2, Pls.' App., 64 (emphasis added). The Court construes this as meaning that the parties intended that only the internal laws of Delaware—*e.g.*, the laws passed by its Legislature or decided by its courts—apply to this case, not the laws of the federal courts sitting in Delaware. The federal and state courts are separate and independent systems, and even if parties could select a particular circuit court's law, the language of this Agreement does not do so.

Other federal courts have held similarly. In *Koffman v. Unum Life Ins. Co. of Am.*, a district court rejected an argument that a choice-of-law clause selecting "the laws of Maine" included the law of the First Circuit. 2013 WL 3242350, at *4 (E.D. Va. June 24, 2013). The court determined

that the choice-of-law clause did "not manifest any agreement to be bound by a particular Circuit Court of Appeal's interpretation of federal law." *Id.* Morever, the court questioned whether such an agreement would even be permissible. *See id.* at *4 n. 4 ("When it comes to federal laws, 'federal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case.'") (quoting *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85, 91 (2d Cir. 2006)). In another similar case, a court rejected the argument that Third Circuit law applied because the parties had agreed that their ERISA policy was governed by the laws of the State of Delaware. *McLaren v. Tr. of the Grp. Ins. Tr. for Emp'rs in the Mfg. Indus.*, 2017 WL 4417704, at *2–3 (S.D. Ohio Oct. 4, 2017) (report and recommendation order). In both *Koffman* and *McLaren*, the courts went on to apply the law of their own circuit to the federal-law issues at hand. *See Koffman*, 2013 WL 3242350, at *4–6; *McLaren*, 2017 WL 4417704, at *2–3 (concluding "this Court is bound by the law of the Sixth Circuit . . . .").

Similarly here, in deciding an issue of federal securities law, the Court is bound by the law of the Fifth Circuit and the Supreme Court—not the law of another circuit court. *See Cont'l Airlines, Inc.* v. *Am. Airlines, Inc.*, 824 F. Supp. 689, 710 (S.D. Tex. 1993) ("This Court is absolutely bound to follow the pronouncements of the Fifth Circuit and the Supreme Court as to what is, and what is not, federal law."); *Bordelon v. Consolidated Georex Geophysics*, 628 F. Supp. 810, 812 (W.D. La. 1986) (affirming that "courts of the Fifth Circuit are not bound by decisions rendered by other circuits"). The Court will therefore apply the law of this circuit where applicable and consider the decisions of other circuits if persuasive.

ii.    Disclaimer-of-Reliance Clauses and Federal Securities Law

Turning to the substantive issue, Plaintiffs contend that summary judgment is unwarranted

as to their federal securities fraud claims under § 10b of the Exchange Act (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) because disclaimer-of-reliance clauses do not, as a matter of federal law, bar claims based on extracontractual representations. Doc. 118, Pls.' Resp., 19–21. Defendants respond by arguing that (1) this Court should side with the majority of circuit courts that have held that disclaimer-of-reliance clauses preclude parties from arguing they reasonably relied on prior representations or, alternatively, (2) this Court should consider the disclaimer-of-reliance clause here as evidence that Plaintiffs did not rely on extracontractual representations. Doc. 124, Defs.' Resp., 14–18. Plaintiffs reply by reaffirming their argument that the Court should apply Third Circuit law and also arguing that fact issues preclude a finding that they disclaimed reliance on the extracontractual representations, regardless of the disclaimer-of-reliance clause. Doc. 129, Pls.' Reply, Doc. 6–9.

The issue here is whether a disclaimer-of-reliance clause negates the reliance element of a federal securities fraud claim. Generally, § 10(b) and Rule 10b-5 "prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 681 (5th Cir. 2015) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 134 S. Ct. 2398, 2407 (2014)). "The courts have implied from these statutes and Rule 10b-5 a private damages action, which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 39 (5th Cir. 2009) (citations omitted). To state a claim under these provisions, "a plaintiff must allege, in connection with the purchase or sale of securities, '(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused the plaintiff's injury.'" *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 661 (N.D. Tex.

2017) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406–07 (5th Cir. 2001)). Here, the Court will focus only on the reliance element and its relation to a disclaimer-of-reliance clause.

Although the Fifth Circuit has yet to rule on the effect of a disclaimer-of-reliance clause on securities fraud claims, other circuits have addressed this issue. Some courts have held that a disclaimer-of-reliance or integration clause can completely negate the element of reliance in securities fraud claim, at least with respect to prior oral representations. *See Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000); *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir. 1989) (Breyer, J.); *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988) (R.B. Ginsburg, J.). To illustrate further, the Seventh Circuit in *Rissman* held that a plaintiff could not rely on a defendant's prior oral representations that he would never take their jointly-owned company private because the contract contained the following clause: "The parties further declare that they have not relied upon any representation of any party hereby released [Defendant] or of their attorneys . . . , agents, or other representatives concerning the nature or extent of their respective injuries or damages." *Rissman*, 213 F.3d at 383.[5] Because the plaintiff was relying only on oral representations of the defendant and because these clauses barred reliance on such claims, the court found that his 10b-5 claim failed. *Id.* at 383–84 (relying on *Jackvony*, 873 F.2d 411 and *Caruso*, 848 F.2d 1283). The court based its decision on "promoting the primacy of the written word" as a "principal function of the federal securities laws." *Id.* at 384. Defendants argue

---

[5] That agreement also contained the following clause: "(a) no promise or inducement for this Agreement has been made to him except as set forth herein; (b) this Agreement is executed by [Plaintiff] freely and voluntarily, and without reliance upon any statement or representation by Purchaser, the Company, any of the Affiliates or O.R. Rissman or any of their attorneys or agents except as set forth herein[.]"

that this Court should take the same position.

However, the majority of courts, including courts from the above-cited circuits, hold that disclaimer-of-reliance clauses are but one factor courts consider in the reliance analysis. *See AES Corp. v. Dow Chemical Co.*, 325 F.3d 174, 179 (3d Cir. 2003); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 921 (6th Cir. 2007); *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 548 (6th Cir. 2012); *Bruschi v. Brown*, 876 F.2d 1526, 1529 (11th Cir. 1989); *Carlucci v. Han*, 907 F. Supp. 2d 709, 737 (E.D. Va. 2012); *see also San Diego Cty. Emps. Retirement Ass'n v. Maounis*, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010) ("To determine whether a plaintiff's reliance was reasonable in light of such a merger or waiver clause, the Court must look to the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties and the contents of any agreement between them.") (internal quotations omitted).[6]

For example, in *Brown v. Earthboard Sports*, the Sixth Circuit refused to adopt a blanket rule that disclaimer-of-reliance clauses bar securities fraud cases for suits based on deceit by prior representations. *Brown v. Earthboard Sports*, 481 F.3d at 921. The court found that despite the above-cited case law seeming to adopt such a rule, the opinions from its sister circuits "simply accord an appropriate weight to evidence of signing of [a disclaimer-of-reliance] clause in the entire context

---

[6] Several commentators have also addressed this issue. *See*, 3 Thomas L. Hazen, <u>Law of Securities Regulation</u> § 12:80, Westlaw (updated May 2018) ("The fact that an investor signed a statement denying reliance on other sources will not in and of itself preclude a Rule 10b-5 claim based on oral representations.") (citing *Johnson v. Songwriter Collective, LLC*, 2006 WL 861490 (M.D. Tenn. Mar. 28, 2006) and *Carr v. Equistar Offshore, Ltd.*, 1995 WL 562178 (S.D.N.Y. Sept. 21, 1995)); 2 Brent A. Olson, <u>Publicly Traded Corporations Handbook</u> § 14:15, Westlaw (updated May 2018) (Recognizing that "[s]everal Circuits, including the Second, Sixth and Eleventh Circuits, have rejected a *per se* rule that non-reliance clauses foreclose the possibility of recovery.") (citations omitted); 5 Alan R. Bromberg, Lewis D. Lowenfels & Michael J. Sullivan, <u>Bromberg & Lowenfels on Securities Fraud</u> § 7.459, Westlaw (updated July 2018) (collecting cases on antireliance devices).

of the alleged fraud." *Id.* (comparing *AES Corp.*, 325 F.3d at 181 and *Rogen v. Ilikon Corp.*, 361 F.2d 260 267–68 (1st Cir. 1966) with *Rissman*, 213 F.3d at 383–84 and *Jackvony*, 873 F.2d at 411). Instead of applying a blanket rule, the court considered the disclaimer-of-reliance clause along with the following other factors to determine if plaintiffs had reasonably or justifiably relied on extracontractual statements:

> (1) the sophistication of expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to relevant information; (4) the existence of a fiduciary relationship; (5) concealment of fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Brown v. Earthbound Sports*, 481 F.3d at 921. Other courts have applied similar factors when considering reasonable or justifiable reliance. *See Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993) (collecting cases). Applying this test, the Sixth Circuit refused to grant summary judgment on the issue of reliance, notwithstanding the nonreliance clause, because it found that the plaintiff did not act unreasonably in relying on oral statements. *Brown v. Earthboard Sports*, 481 F.3d at 921.

Further, subsequent courts that have construed circuit court cases that applied a *per se* rule to nonreliance clauses, like *Rissman*, have been unwilling to apply those holding broadly. Instead, Judge Rovner's concurring opinion in *Rissman* has gained more traction. *See Rissman*, 213 F.3d at 387–89 (insisting that "the existence of a non-reliance clause will not automatically preclude damages for prior oral statements"). Judge Rovner intended the opinion "to avoid the inevitable quotes in future briefs characterizing our holding as an automatic rule precluding any damages for fraud based on prior oral statements when a non-reliance clause is included in a written agreement."

*Id.* at 389. Judge Rovner noted that the cases relied on by the majority—the same cases relied on by Defendants here—still considered "all circumstances surrounding the transaction . . . in determining whether reliance on prior oral statements can be deemed reasonable." *Id.* at 387–88 (citing *Jackvony*, 873 F.2d 411 and *One-O-One*, 848 F.2d 1283). Notably, in *Jackvony*, the First Circuit applied the same factors that the Sixth Circuit applied in *Brown* and concluded that reliance was unreasonable because the extracontractual statements at issue were vague, the plaintiff was a sophisticated investor, the contract at issue contained a nonreliance clause, and the plaintiff participated in drafting of the contract. *Id.* at 388 (discussing *Jackvony*, 873 F.2d at 416). Judge Rovner further noted that the D.C. Circuit had walked back its seemingly unequivocal opinion in *One-O-One* in a later opinion *Whelan*, where the court recognized that *One-O-One* "was plainly not intended to say that an integration clause bars fraud-in-the-inducement claims generally or confines them to claims of fraud in execution." *Id.* (citing *One-O-One*, 848 F.2d at 1286 and quoting *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995) (quotations removed)).

Because the Fifth Circuit has not decisively ruled on this issue, the Court, in an abundance of caution, will apply the contextual approach taken by the majority of courts that have recently considered the issue. *See Brown v. Earthboard Sports*, 481 F.3d at 921; *AES Corp.*, 325 F.3d at 180–81; *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491–92 (S.D.N.Y. 2005) ("The Second Circuit has continued to hold that *in appropriate circumstances*, sophisticated parties may waive rights to rely on statements made outside an agreement[.]") (emphasis added). The Court finds that the contextual approach is less likely to conflict with the antiwaiver provisions of the Exchange Act, *see* 15 U.S.C. § 78cc(a)&(b), than the *per se* rule, while also giving appropriate weight to the parties' contractual expectations and preferences. *See 3* Hazen, <u>The Law of Securities Regulation</u> § 12:80

("This result [rejecting a *per se* bar] is consistent with the rule that compliance with the securities laws cannot be waived.").

Applying this approach here, the Court finds that the disclaimer-of-reliance clause applies to the extracontractual representations that Plaintiffs allege. First, Plaintiffs do not seem to dispute they are sophisticated parties. Indeed, Plaintiffs have represented in the Agreement that "either alone or with the assistance of his or her own professional advisors, he or she has the financial knowledge and sophistication to evaluate the opportunity presented hereby[.]" Doc. 118-2, Pls.' App., 31. Plaintiffs also both contractually represented that they have "such knowledge and experience in financial and business matters that [they are] capable of evaluating the merits and risks of investment in the Rollover Shares[.]" *Id.* at 32. Further, Plaintiffs hired experts as consultants to aid them during negotiations and due diligence. Doc. 124, Defs.' Resp., 17. The Court finds nothing in Plaintiffs' briefing that would refute their status as sophisticated parties in this transaction. *See* Doc. 129, Pls.' Reply, 9 (arguing that the Court should consider "Plaintiffs' sophistication and the parties' long-standing personal relationship" together without actually providing an argument for why Plaintiffs are unsophisticated). As noted by the authority Plaintiffs rely upon, "cases involving a non-reliance clause in a negotiated contract between sophisticated parties will often be appropriate candidates for resolution at the summary judgment stage." *AES Corp.*, 325 F.3d at 181; *see also Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195–96 (2d Cir. 2003) (granting summary judgment on the issue of reliance where plaintiff represented it was a sophisticated party in a contract and where it also disclaimed reliance on extracontractual representations).

Moreover, here, the parties spent months negotiating the Agreement and included six pages of representations that Atherio specifically warranted as correct and true, as well as financial

documents, disclosure sheets, and balance sheets attached to the agreement. *See* Doc. 118-2, Pls.' App., 47–52. The parties agree also that no fiduciary relationship existed here. Doc. 129, Pls.' Reply, 7. Defendants argue, and the Court agrees, that Plaintiffs had ample opportunity for the year leading up to the Agreement's closing—when "the parties worked closely" to ensure the deal would get done, *id.* at 9—to inquire into basic information about Defendants on which they base their fraud claims. Doc. 124, Defs.' Resp., 17–18 (citing Plaintiffs' testimony that shows they never requested background information or personal financial information regrading Cory or other Atherio executives). Plaintiffs further failed to negotiate for these representations to be included in the Agreement along with the other representations that Atherio had made. *Cf. Emergent Capital*, 343 F.3d at 196 ("[Plaintiff] should have protected itself by insisting that this representation be included in the stock purchase agreement."); *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266, at *15 (S.D.N.Y. Mar. 30, 2018) ("Plaintiffs' express warranties and disclaimer of reliance on any oral representations coupled with their self-proclaimed sophistication precludes as a matter of law a finding of reasonable reliance upon [Defendants'] alleged misrepresentations . . . .") (internal quotations removed).

In sum, the Court finds that the disclaimer-of-reliance clause bars Plaintiffs' federal securities fraud claims based on extracontractual representations. However, as the Court found *supra*, in Part III.B, Plaintiffs' fraud claims will survive the disclaimer-of-reliance clause insofar as they are based on intracontractual representations in the Agreement. Consideration of those representations is better left to the Defendants' pending motions for summary judgment.

D.    *Texas Securities Act Claim*

The next issue is whether Plaintiffs' Texas securities-fraud claim can proceed even though

the parties agreed that Delaware law governs claims arising from the Agreement. *See* Doc. 118-2, Pls.' App., 64. Unless a claim arises under federal law, federal courts apply the forum state's choice-of-law rules. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Texas choice-of-law rules thus apply in this case.[7]

Generally, Texas law gives effect to contractual choice-of-law provisions. *See* Tex. Bus. & Com. Code Ann. § 1.301 (West 2009); *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580–81 (5th Cir. 2015) (noting, however, that while the "default position is that they are enforceable, it is not uncommon for a party to overcome them"). If a party seeks to enforce a choice-of-law clause, Texas courts first determine whether the clause covers the claims at issue. *See Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 952 (S.D. Tex. 2011). The breadth of a choice-of-law clause—*i.e.*, whether it covers both tort and contract claims—depends on how broadly it is written. *Id.* at 951. The clause at issue here is broad enough to cover all Plaintiffs' claims because it states:

> "[The] Agreement *and all disputes or controversies arising out of or relating to [the] Agreement or the transactions contemplated [by the Agreement]* shall be governed by, and construed in accordance with, the internal laws of the State of Delaware, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws provisions."[8]

---

[7] Unfortunately, Plaintiffs' briefing does not shed light on this issue, as they do not address the applicable Texas choice-of-law rules. Plaintiffs argue instead that the Delaware Securities Act does not apply because the transaction at issue has no substantial nexus to Delaware. *See* Doc. 118, Pls.' Resp., 21–24. But even if Plaintiffs were correct that a Delaware Court would dismiss their claim if they filed it under the Delaware Securities Act, they have provided no argument for why the Texas Security Act applies when they agreed to be bound by Delaware law.

[8] The *Quicksilver* court's decision supports this conclusion. In that case, the court held that the following clause covered both contract and tort claims, including claims for fraud and false representation: "This contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of County of Cleveland, State of Oklahoma." *Quicksilver*

Doc. 118-2, Pls.' App., 64 (§ 11.8) (emphasis added). Because Plaintiffs' Texas securities-fraud claim arises from or relates to "the transactions contemplated [by the Agreement]," the choice-of-law clause governs the claims.

Finding that the choice-of-law clause applies to the Texas securities-fraud claim, the Court must next determine whether to enforce the clause. "Texas law recognizes the 'party autonomy rule' that parties can agree to be governed by the law of another state." *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 849 (W.D. Tex. 2016) (quoting *Exxon Mobil Corp. v. Drennen, III*, 452 S.W.3d 319, 324 (Tex. 2014)). Texas follows the Restatement (Second) of Conflict of Laws to determine whether to enforce a choice-of-law clause. *E.g., Maxus Exploration Co. v. Moran Bros.*, 817 S.W.2d 50, 53 (Tex. 1991). Under the Restatement, courts must respect a choice-of-law agreement unless a party arguing against its application shows either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

Section 187(2) of the Restatement (Second) of Conflict of Laws (1971).

Here, although Defendants put Plaintiffs on notice of the proper choice-of-law rules to apply here, *see* Doc. 124, Defs.' Resp., 19 n.5 (noting that Texas choice-of-law rules apply), Plaintiffs have failed to argue why the choice-of-law clause should not be applied under Texas choice-of-law rules.

---

*Res.*, 792 F. Supp. 2d at 952; *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 988–89 (S.D. Tex. 2004) (holding that contract stating that Mexican law would apply to all disputes that "arise in connection with performance of this Agreement" applied to both tort and contract claims).

In other words, Plaintiffs have not shown either (1) that Delaware has no substantial relationship to the parties or transaction or (2) that Texas has a more significant relationship and materially greater interest with the parties and the transaction than Delaware does under § 188 of the Restatement and that Texas has a fundamental policy that would be contravened by applying Delaware law. Instead, in a circuitous argument applying the wrong standard to this choice-of-law issue, Plaintiffs have argued that "there is not a sufficient nexus [to Delaware] to apply Delaware's blue-sky Laws." Doc. 118, Pls.' Resp., 23. Thus, because Plaintiff has not met its burden of showing why the Delaware choice-of-law clause should not be enforced, the Court will apply Delaware law here by default. *ECL Group, LLC v. Mass*, 2018 WL 949235, at *6 (N.D. Tex. Feb. 20, 2018) ("Under Texas law, choice of law agreements are, by default, enforceable.") (citing *Cardoni*, 805 F.3d at 580); *Colony Ins. Co. v. Adsil, Inc.*, 2018 WL 2562555, at *9 (S.D. Tex. June 4, 2018) (applying the parties' contractual choice of law to protect the "justified expectations of the parties" when it was unclear under § 187(2)(b) which states' law should apply).

The next issue is determining whether, as Defendants argue, enforcing the parties' choice of Delaware law bars the Plaintiffs from bringing a claim under the Texas Securities Act—an internal law of the state of Texas. While the parties do not cite to and the Court has not found a binding case on point, other courts have held that choice-of-law clauses can bar the application of another state's securities laws. For example, in a very similar case, a district court in Virginia held that the Virginia Securities Act should not apply to an agreement with a Delaware choice-of-law provision. *Pyott–Boone Elecs., Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 547 (W.D. Va. 2013). After finding that the plaintiff's noncontractual securities-fraud claims were within the scope of the Delaware choice-of-law clause, the court applied Virginia choice-of-law rules

and determined that it was not unfair or unreasonable to hold the parties in the case to law they chose. *Id.* The court came to this conclusion even though the plaintiff and defendant were Virginia citizens and the securities sale occurred in Virginia, which gave the Commonwealth of Virginia an interest in applying its own securities law. *Id.* The court found that the plaintiff—a Virginia citizen—would not be prejudiced because Virginia Securities law and Delaware securities law were similar and both provided private causes of action. *Id.*

This Court finds that much of the same analysis and conclusions of the *Pyott–Boone* court apply to this case. Here, the Court has similarly found that the scope of the Delaware choice-of-law clause is broad enough, under Texas choice-of-law rules, to apply to Plaintiffs' noncontractual securities-fraud claims. The Court agrees as well with the reasons the *Pyott–Boone* court provided for finding the Virginia securities law claim did not apply. First, refusing to apply the parties' chosen law "would contradict [the forum state's] policy to respect the chosen law of the contracting parties, so long as that law has a material relationship to the transaction." *Id.* (citing *Organ v. Byron*, 435 F. Supp. 2d 388, 392 (D. Del. 2006)) (internal quotations omitted). Texas has a strong policy of respecting and enforcing contracting parties choice-of-law clauses, as long as the transaction bears a reasonable relation to that state. *See, e.g., Drennen*, 452 S.W.3d at 324 (citing Tex. Bus. & Com. Code § 1.301(a)). Here, the transaction clearly bears a reasonable relation to Delaware, as the corporation (and previous defendant) that participated in the transaction was a Delaware corporation and the securities at issue were Delaware securities. Doc. 124, Defs.' Resp., 20–21; *cf. Drennen*, 452 S.W.3d at 324 (enforcing New York choice-of-law clause even though parties' only relation to New York was that one party had spent a few years working there prior to any litigation and that the subject matter of the transaction were stocks traded on the New York Stock Exchange).

To "give 'force to such ambiguous semantic arguments,'" *Pyott–Boone Elec.*, 918 F. Supp. 2d at 547 (quoting *Organ*, 435 F. Supp. 2d at 392), would undermine Texas' choice-of-law policies. Second, the Court also finds that the Texas Securities Act and the Delaware Securities Act are similar and both provide a private cause of action; thus, the application of Delaware law would not deprive Plaintiffs here—Texas citizens—of adequate protections under the domestic law. *Compare* Del. Code Ann. tit. 6 §§ 73–605 & 73–201 (West 2018) *with* Tex. Rev. Civ. Stat. Ann. art. 581–33 (Vernon's 2017).[9]

Based on this authority and the fact that Plaintiffs have not shown why Delaware law, by which they agreed to be bound, should be disregarded under Texas choice-of-law rules, the Court holds that Plaintiffs' claim under the Texas Securities Act is barred.

## IV.

## CONCLUSION

After considering the Plaintiffs' Rule 56(f) Response to the Court's Summary Judgment Order (Doc. 118) filed on July 9, 2018; Defendants' Response to Plaintiffs' Rule 56(f) Response to the Court's Summary Judgment Order (Doc. 124) filed on July 30, 2018; and Plaintiffs' Reply (Doc. 129) filed on August 10, 2018, the Court **GRANTS, in part,** summary judgment in favor of Defendants.

---

[9] The Court finds two other district court decisions helpful in resolving this issue. The first case is *Organ v. Bryon*, 435 F. Supp. 2d 388 (D. Del. 2006), which was relied on by the *Pyott–Boone* court. In that case, the Delaware district court dismissed—for the reasons stated above—a claim under the Illinois securities statute because the parties had agreed to apply Delaware law to issues arising out of their merger agreement. *Id.* at 391–93. The Court finds this case similarly persuasive. The second case is a recent case from the Southern District of New York. *Townsley v. Airxcel, Inc.*, 2018 WL 3946449 (S.D. N.Y. Aug. 15, 2018). In *Townsley*, the district court granted summary judgment dismissing a plaintiff's claim under the Texas Securities Act because "the parties agreed that the subject matter of the contract would be governed by New York law" and "New York law does not include the TSA." *Id.* at *7.

Thus, Plaintiffs' federal securities fraud and common-law fraud claims are barred by the disclaimer-of-reliance clause insofar as they rely on extracontractual representations. However, Plaintiffs' claims survive insofar as they are linked to the intracontractual representations related to Thomas Farb's resignation. Moreover, the Court **GRANTS** summary judgment in favor of Defendants on Plaintiffs' Texas Securities Act claim. Nothing in this Order prevents the Court from considering Defendants' motions for summary judgment on what remains of Plaintiffs' claims. If the parties wish to amend their briefing in response to this Order, they shall request leave of Court to do so.

SO ORDERED.

SIGNED: October 19, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE